VALIENTE & Co., Plaintiff and Appellee, *v.* HEIRS OF ABDÓN FUENTES MARRERO, Defendants and Appellants.

No. 6486.—Argued February 5, 1937.—Decided April 21, 1937.

*Dubón & Ochoteco* for appellants.  *R. Díaz Cintrón* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Vailente & Co., a mercantile partnership domiciled in Corozal, P. R., brought an action of debt against the heirs of Abdón Fuentes, named Rosalía Suárez, his widow, and Aurelia, Elisa, María, Florentino, Aureliana, Carmela, Rosalía, Manuela, and Francisca Fuentes, his children. The complaint was filed in the District Court of San Juan, on June 3, 1929.

After the defendants were summoned, only Aurelia and Rosalía Fuentes answered, the first through her attorney, Pedro G. Quiñones, and the second through her attorneys, De la Torre & Ramírez, a default being entered on June 18, 1929, as regards the others.

Upon the case being called for trial on December 18, 1929, the plaintiff and the defendants Aurelia and Rosalía Fuentes appeared through their attorneys, and on the last day of the same month, the court rendered judgment for the plaintiff. There was involved the collection of two promissory notes and a current account of the defendants' predecessor in interest, and the latter's daughters, Aurelia and Rosalía, set up the defense of incapacity of their father to contract such obligations by reason of insanity. After weighing the evidence, the district court concluded that the obligations claimed did exist, and that Abdón Fuentes "had capacity to enter into all kinds of contracts" in accordance with "a judicial decree which has not been attacked," the plaintiff having successfully rebutted "the defenses of insanity pleaded," and consequently it adjudged "the defendant heirs *(sucesión)*" to pay to the plaintiff the sum of $12,738.61, with interest thereon at the legal rate and costs.

The defendants Aurelia and Rosalía Fuentes took an appeal and by a judgment of July 29, 1933, this Supreme

Court decided that the judgment appealed from should be reversed "so far as the defendants . . . are concerned," and another one rendered "to the effect that as to such defendants, plaintiff may not recover, all without special pronouncement as to costs." *Valiente & Co.* v. *Heirs of Fuentes,* 45 P.R.R. 600.

At this stage, on September 5, 1933, the defendants Elisa, María, Carmen, Manuela, and Francisca Fuentes, and Rosalía Suárez, through their attorneys, filed in the trial court a writing, wherein they stated that they considered themselves served with notice of the judgment rendered against them on December 31, 1929, and appealed therefrom to this court. A certificate of the clerk of the district court, attesting to the fact that it does not appear of record that notice of the judgment had been served upon said defendants at any time, was incorporated in the transcript.

The new appellants stated to the lower court that they elected to perfect their appeal by means of a statement of the case, which accordingly they filed within the term granted by the court and which the court approved on November 10, 1933, over the plaintiff's objection.

After said appeal had been perfected, the plaintiff-appellee filed in this court, on January 18, 1934, a motion requesting that "the extent thereof" be fixed and that the statement of the case be stricken out. The motion, which was fully argued by the parties, was decided on the 26th of the following May, the same being overruled without prejudice to the right to subsequently raise the same questions upon the final submission of the case to the decision of the court.

After a large number of extensions had been granted, the brief of the appellants was filed, and the hearing of the appeal was set for March 1, 1936. It was postponed at the request of the appellee, and set anew for the first day of May, and again potsponed also at the request of said party, the hearing being finally held on January 21, 1937, when, a supplemental brief having been filed by the appellants, the appellee

was granted leave to reply. It did so on the 5th of February last, the case being finally submitted on that date to the consideration and decision of the court.

The appellants assign in their brief as errors that the judgment appealed from is contrary to the evidence, because the latter shows the insanity of their predecessor in interest, and that it is contrary to law, because the decision adjudges the defendant succession to pay a nonexistent obligation.

It is insisted by the appellee that the appellants lost their right of appeal by failing to exercise the same within the statutory period, and that on the assumption that the appeal was timely taken, it would be limited to the examination of the complaint and could not be extended to a review of the evidence introduced by the defendants who appeared to support the defense which they pleaded in their answers.

■■ The time for taking an appeal in Puerto Rico is governed by section 2 of Act No. 70 of 1911, Code of Civil Procedure, 1933 ed., p. 139, which imposes upon the clerk of the court the duty "to mail a written notice to the losing party or his attorney when the judgment from which the appeal may be taken is rendered, notifying him of the rendition of the judgment" and to file "a copy of such notice . . . with the papers in the case" and which provides that "the time within which such appeal may be taken shall begin to run from the date of the filing of such notice among the papers."

Inasmuch as an appeal may be taken from a judgment by default, the quoted provision has been regarded as applicable to that kind of judgments.

There is involved a question of law which has already been repeatedly decided, and as long as the statute is in force, the only remedy available to avoid the occurrence of cases like the present one is for the prevailing party to see that the statute is duly complied with.

■ Can the appellants avail themselves of the defense pleaded and the evidence introduced by the defendants who

appeared, and invoke the decision of this Supreme Court of July 29, 1933, as the law of the case?

The answer to this question depends upon the nature of the action exercised, the manner in which all the defendants were called to answer, and the kind of defense interposed by the answering defendants.

We know that this is an action of debt based on promissory notes executed by Abdón Fuentes, and on a current account authorized by him; that Abdón Fuentes died, and that in the complaint, payment of the debt contracted by their predecessor in interest is demanded from the defendants—decedent's widow and children—in their capacity as heirs.

We also know that two of the defendants appeared and alleged that the obligation claimed was nonexistent, because, at the time their predecessor in interest executed the promissory notes and authorized the account, he was insane and was, therefore, incapable of entering into any contract; and that that defense, which was dismissed by the district court, was finally successful in this Supreme Court, and it now stands.

Lastly, we know that the defendants-appellants were summoned and took no action, and that their default was entered and they were adjudged to pay the obligations of their predecessor in interest by the general judgment which disposed of the case and which was appealed by, and reversed as regards, the answering defendants.

In view of the foregoing facts, we think that the case is governed by the general rule on the subject which, based on numerous authorities cited, is set forth in 78 A.L.R. 939, as follows:

"The question whether a successful defense by some of several codefendants may inure to the benefit of a defaulting defendant is dependent upon the nature, scope, and extent of the defense interposed by the answering defendants, and, to some extent, upon the joint or several nature of the right asserted.

"The courts are agreed with practical unanimity that in actions against several defendants jointly, where the defense interposed by the answering defendant is not personal to himself (as is the defense of infancy, coverture, or bankruptcy on the part of the pleader), but common to all, as where it goes to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant, or questions the merits or validity of the plaintiff's entire cause of action in general, or his right to sue, such defense, if successful, inures to the benefit of the defaulting defendants both in actions at law and suits in equity, with the result that final judgment must be entered not merely in favor of the answering defendant, but also in favor of the defaulting defendants."

H. C. Black, in his treatise on "The Law of Judgments," summarizes the authorities on the subject, to the same effect, thus:

"In an action of contract against several defendants, if one of them suffers default, and another, under the general issue, sets up and maintains a defense which negatives the plaintiff's right to recover against either of the defendants and shows that he had no cause of action, the plaintiff will not be entitled to judgment against the one who was defaulted, but on the contrary the successful defense will enure to the latter's benefit, and judgment must be rendered for both the defendants. So if one defendant interposes an objection by way of demurrer, going to the plaintiff's right to recover, and not merely a personal matter of discharge, which is sustained, and judgment rendered on it in his favor, it will enure to the benefit of his co-defendant. But this rule also is modified by the joint debtor acts. Thus, under a provision that judgment may be given for or against one or more of several defendants, it is held that, where three persons are sued as partners, and two of them suffer default, but the other answers, denying that he was a member of the firm, judgment may be entered against those in default, though it is rendered in favor of the answering defendant. So an action on a joint and several obligation against two defendants, only one of whom appeared and answered, can be tried, and verdict and judgment rendered for or against the party answering, without regard to the proceedings against his co-defendant.

"On the other hand, if one of the defendants makes default and the other goes to trial, the effect is to suspend the judgment against the defaulting defendant until the result of the trial is ascertained,

and if the plaintiff obtains a verdict, he is then entitled to a joint judgment against all the defendants. Nor is there any necessity, in such a case, of having previously taken an interlocutory judgment by default against the party failing to answer. Where, in a joint action ex contractu against two defendants, one of them is defaulted, and the other appears, and separate judgments are rendered against both of them, if the defendant who appeared enters a review, the effect is to vacate the judgment as to both defendants and to carry the whole case to the next succeeding term, notwithstanding a separate judgment may have been entered on the record against the defendant who was defaulted." Black on Judgments, vol. I (2d. ed.), p. 310.

As the preceding rule is the applicable one, it is clear that since the defendants-appellants can invoke the defense alleged and proved by the defendants who obtained the judgment of this court of July 29, 1933 (45 P.R.R. 600), said judgment is also the law of the case as to them, and its benefits should be expressly extended to them as prayed.

The judgment appealed from must, therefore, be reversed in so far as the defendants-appellants were thereby adjudged, in their capacity as heirs of Abdón Fuentes, to pay the obligations claimed by the plaintiff, and another judgment rendered instead, holding that the plaintiff recover nothing as against said defendants-appellants, all without special imposition of costs.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.